*E-FILED - 8/2/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCEL LOVE,                                            No. C 08-4356 RMW (PR)

               Petitioner,                          ORDER DENYING PETITION
                                                       FOR WRIT OF HABEAS
    vs.                                            CORPUS; DENYING
                                                       CERTIFICATE OF
MELISSA LEA, Chief Deputy Admin., et                   APPEALABILITY
al.,

               Respondents.

      Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254.

**BACKGROUND**[1]

      On August 1, 2004, petitioner was charged in a four count information with (1) a lewd

and lascivious act against Dora B. on January 3, 2003; (2) a lewd and lascivious act against

Michelle B. on January 3, 2003; (3) a lewd and lascivious act against Michelle B. sometime

between July 1, 2002 and July 31, 2002; and (4) continuous sexual abuse of Michelle B. between

August 1, 2002 and March 31, 2003.

      Dora and Michelle, the victims, are close family friends.  At the time of trial, Dora was

---

[1]  The facts of this case are taken from the California Court of Appeal opinion in People
v. Love, No. A108586, 2006 WL 3012921 (Cal. App. 1 Dist. Oct. 24, 2006).

1   11 years old and Michelle was 12 years old.  Petitioner was the boyfriend of Michelle's mother,

2   Stacey.  Between 2001 and the Spring of 2003, petitioner lived with Stacey, Michelle, and

3   Michelle's three brothers.

4           On December 17, 2003, Dora and Michelle first accused petitioner of sexually molesting

5   them.  On that day, Dora told her cousin that on January 3, 2003, petitioner molested her while

6   they were watching a movie at Stacey's house with Michelle and her brothers.  When Dora's

7   mother found out and asked Dora, Dora suggested they ask Michelle to confirm the molestation

8   and Michelle confirmed it.  When Michelle learned petitioner was present, she recanted her

9   affirmation, claiming that she did not know the truth.  After petitioner was arrested, a woman

10  named Linda Pearl urged Michelle to tell her mother about her own molestation by petitioner.

11  Pearl was with Dora's mother when Dora's mother called the police.  After Michelle told her

12  mother that petitioner had repeatedly molested her during the time he was living with them from

13  2001 through the Spring of 2003, Michelle and her mother also reported the molestation to the

14  police.

15          In January 2004, Michelle gave a taped interview in which she reported that petitioner

16  first molested her within four or five weeks after he met Stacey in 2001.  At that time, Michelle

17  was 9 years old.  Michelle remembered that it was summertime and she was scared that Stacey

18  would be angry with her.  Michelle also remembered that she was scared that if she told her

19  mother, petitioner would hurt her mother as he had previously done.  Michelle recounted that

20  petitioner and she had vaginal intercourse "more than 20 times" when Michelle was 9 and 10

21  years old.  Michelle specifically recalled a time when petitioner abused her when "she was

22  becoming ten."  Michelle's tenth birthday was in July 2002.  Michelle explained that petitioner

23  "always did that" when he lived in their home and that it happened "every day," but sometimes

24  "it didn't happen for a couple of weeks."  Michelle stated that petitioner frequently put his penis

25  into her anus, rubbed his penis against her bottom, occasionally touched her chest, and once

26  forced her to touch his penis.  Regarding the January 3, 2003 incident with Dora, Michelle said

27  that petitioner molested the both of them as they watched a movie in Stacey's room with her

28  brothers.  Michelle stated that the abuse stopped when petitioner went to jail for "hitting her

1    mom," which occurred in January or March 2003.

2        Michelle testified that petitioner molested her "most of the time" when he lived at their

3    house.  While her trial testimony was not completely consistent with her interview statements

4    and she could not recall exact dates, she did confirm that petitioner touched her on her chest,

5    touched her body with his penis, and inserted his penis into her vagina "a lot of times," which to

6    Michelle, meant more than 20 times.  Michelle also confirmed that petitioner molested Dora as

7    they all watched a movie together on January 3, 2003, but denied that petitioner molested her

8    that night as well.

9        At trial, petitioner impeached Michelle with inconsistencies in her statements and sought

10   to discredit her credibility.  Petitioner called Dr. Abbott, a clinical psychologist, who testified

11   about the methodology of Michelle's interview, stating that he was concerned about the leading

12   and suggestive questioning as well as Michelle's delayed and inconsistent responses.  Two

13   police investigators testified about the inconsistencies in Michelle's and Dora's recollection of

14   events between the girls' testimony and their previous reports.

15       The jury ultimately found petitioner guilty of Counts 1, 3, and 4, and not guilty of Count

16   2 (committing a lewd act against Michelle on January 3, 2003).  The trial court sentenced

17   petitioner to a term of 14 years in state prison.  In 2006, on direct appeal, the state appellate court

18   affirmed the judgment.  In 2007, the state supreme court denied the petition for review and the

19   United States Supreme Court denied certiorari.  The instant federal petition was filed on

20   September 17, 2008.

21                                          **DISCUSSION**

22   **A.**    <u>**Standard of Review**</u>

23       Because the instant petition was filed after April 24, 1996, it is governed by the

24   Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant

25   restrictions on the scope of federal habeas corpus proceedings.  Under the AEDPA, a federal

26   court may not grant habeas relief with respect to a state court proceeding unless the state court's

27   ruling was "contrary to, or involved an unreasonable application of, clearly established federal

28   law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was

1   based on an unreasonable determination of the facts in light of the evidence presented in the

2   State court proceeding."  28 U.S.C. § 2254(d)(2).

3        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

4   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

5   law or if the state court decides a case differently than [the] Court has on a set of materially

6   indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the

7   'unreasonable application clause,' a federal habeas court may grant the writ if the state court

8   identifies the correct governing legal principle from [the] Court's decisions but unreasonably

9   applies that principle to the facts of the prisoner's case."  Id.  "[A] federal habeas court may not

10  issue the writ simply because the court concludes in its independent judgment that the relevant

11  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

12  that application must also be unreasonable."  Id. at 411.

13       "[A] federal habeas court making the 'unreasonable application' inquiry should ask

14  whether the state court's application of clearly established federal law was 'objectively

15  unreasonable.'"  Id. at 409.  In examining whether the state court decision was objectively

16  unreasonable, the inquiry may require analysis of the state court's method as well as its result.

17  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).  The "objectively unreasonable"

18  standard does not equate to "clear error" because "[t]hese two standards . . . are not the same.

19  The gloss of clear error fails to give proper deference to state courts by conflating error (even

20  clear error) with unreasonableness."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

21       A federal habeas court may grant the writ if it concludes that the state court's

22  adjudication of the claim "resulted in a decision that was based on an unreasonable

23  determination of the facts in light of the evidence presented in the State court proceeding."  28

24  U.S.C. § 2254(d)(2).  The court must presume correct any determination of a factual issue made

25  by a state court unless the petitioner rebuts the presumption of correctness by clear and

26  convincing evidence.  28 U.S.C. § 2254(e)(1).

27  **B.**    **Petitioner's Claims**

28       As grounds for federal habeas relief petitioner claims:  (1) the evidence was insufficient

to convict him of Counts 3 and 4, in violation of his due process rights; (2) the trial court failed to instruct the jury that it must determine whether the offense under California Penal Code section 288 in Count 3 was committed in the same time period as the continuing sexual abuse count alleged in Count 4, and the trial court failed to instruct that conviction of both offenses was barred if they jury found they were committed in the same time period; (3) the admission of prior sex offense evidence to prove petitioner's propensity to commit similar acts violated petitioner's due process rights; (4) the admission of prior sexual assault and prior domestic violence evidence violated petitioner's due process rights; (5) the trial court erroneously excluded relevant evidence that Michelle had previously made false sexual assault accusations, in violation of petitioner's right to present a defense, and wrongfully put the burden on defense counsel to advise potential defense witnesses of their Fifth Amendment rights, in violation of petitioner's right to conflict-free representation; and (6) the cumulative effect of the errors deprived petitioner of his right to due process.

      1.     Sufficiency of the evidence as to Counts 3 and 4

Petitioner claims that the evidence was insufficient to support guilty verdicts on Counts 3 and 4. In Count 3, petitioner was charged with committing a lewd and lascivious act on Michelle in July 2002. In Count 4, petitioner was charged with continuous sexual abuse of Michelle between August 1, 2002 and March 31, 2003. Specifically, petitioner alleges that Michelle's "memory of specific acts and dates was so lacking that it cannot be said that petitioner sexually assaulted her in any particular month." (Petition, Attachment 4 at 2.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim which, if proven, entitles him to federal habeas relief. See Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.

1    Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether,

2    'after viewing the evidence in the light most favorable to the prosecution, any rational trier of

3    fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id.

4    (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of

5    guilt beyond a reasonable doubt, may the writ be granted.  See Jackson, 443 U.S. at 324.  The

6    Jackson standard must be applied with explicit reference to the substantive elements of the

7    criminal offense as defined by state law.  Sarausad v. Porter, 479 F.3d 671, 678 (9th Cir. 2007).

8         A jury's credibility determinations are entitled to near-total deference.  Bruce v. Terhune,

9    376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson

10   does not permit a federal habeas court to revisit credibility determinations.  See id. (credibility

11   contest between victim alleging sexual molestation and defendant vehemently denying

12   allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination); see

13   also People of the Territory of Guam v. McGravey, 14 F.3d 1344, 1346-47 (9th Cir. 1994)

14   (upholding conviction for sexual molestation based entirely on uncorroborated testimony of

15   victim).

16        Here, petitioner argues that there was insufficient evidence to convict him of Counts 3

17   and 4 because Michelle's testimony was so inconsistent and generic that the jury could not have

18   concluded that petitioner performed any acts on Michelle within the charged time periods, i.e.,

19   July 2002 (Count 3) and between August 1, 2002 and March 31, 2003 (Count 4).  Petitioner

20   gives a variety of reasons why the jury was unlikely to have found that any assaults on Michelle

21   occurred during the specified time periods.

22        The California Court of Appeal's decision to affirm petitioner's convictions was not

23   objectively unreasonable under the Jackson standard.  The Court of Appeal relied on the

24   California Supreme Court's analysis in People v. Jones, 51 Cal. 3d 318 (1980), which set forth

25   the requirements for generic evidence to support a conviction under California Penal Code

26   section 288(a).  First, the victim's testimony must be specific enough "to assure that unlawful

27   conduct  indeed has occurred and to differentiate between the various types of proscribed

28   conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy)."  Id.  Second, the victim's

1   testimony regarding the number of acts committed must be sufficient to support the accounts

2   alleged.  Id.  And third, the victim must "be able to describe the general time period in which

3   these acts occurred . . . to assure the acts were committed within the applicable limitation

4   period."  Id.  "Additional details regarding the time, place or circumstance of the various assaults

5   may assist in assessing the credibility or substantiality of the victim's testimony, but are not

6   essential to sustain a conviction."  Id.

7         Petitioner was charged in Count 3 with a lewd and lascivious act[2] against Michelle

8   sometime between July 1, 2002 and July 31, 2002.  As the Court of Appeal found, Michelle

9   testified that when she was 9 and 10 years old, petitioner inserted his penis into her vagina at

10  least 20 times, and also into her anus about 30 times.  (RT 610.)  She also recounted an incident

11  which occurred around her tenth birthday, which was in July 2002.  (CT 241.)   Based on the

12  victim's statements, and taking into consideration all other evidence in the record, a reasonable

13  jury could have found that petitioner violated California Penal Code section 288(a) in July 2002

14  based on the standard set forth by the California Supreme Court in Jones.

15        Petitioner was charged in Count 4 with continuous sexual abuse[3] of Michelle between

16  August 1, 2002 through March 31, 2003.  As the Court of Appeal found, Michelle testified that

17  petitioner began touching her inappropriately a few weeks after he met her mother in 2001 and

18  did not stop until he went to jail for abusing Michelle's mother in January or March 2003.  (CT

19  _____

20        [2]  California Penal Code § 288(a) provides, "Any person who willfully and lewdly
21  commits any lewd or lascivious act, including any of the acts constituting other crimes provided
    for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the
22  age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or
    sexual desires of that person or the child, is guilty of a felony and shall be punished by
23  imprisonment in the state prison for three, six, or eight years."

24        [3]  California Penal Code § 288.5(a) provides, "Any person who either resides in the same
    home with the minor child or has recurring access to the child, who over a period of time, not
25  less than three months in duration, engages in three or more acts of substantial sexual conduct
    with a child under the age of 14 years at the time of the commission of the offense, as defined in
26  subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as
    defined in Section 288, with a child under the age of 14 years at the time of the commission of
27  the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by
28  imprisonment in the state prison for a term of 6, 12, or 16 years."

163, 166.)  The time period at issue in Count 4 is between August 1, 2002 through January 3, 2003.  Michelle also testified that the abuse occurred "most of the time," and that it "always" happened while petitioner was living at her house.  (RT 609; CT 205.)  Michelle also testified that the molestation happened "every day," but sometimes it did not happen for a few weeks or even a month.  (RT 609-610.)  Assuming as Michelle testified, that the molestation was continuous beginning in 2001 and had even a one-month gap in between acts, the evidence is sufficient to conclude that at least three or more acts of sexual abuse occurred for at least three months between August 1, 2002 and January 3, 2003.   Based on the victim's statements, and taking into consideration all other evidence in the record, a reasonable jury could have found that petitioner violated California Penal Code section 288.5(a) based on the standard set forth by the California Supreme Court in Jones.[4]

Accordingly, the court agrees with the California Court of Appeal that, viewed in the light most favorable to the prosecution, there was sufficient evidence by which a rational juror could convict petitioner of Counts 3 and 4.

2.   Jury Instruction

Petitioner claims that the trial court erred in failing to instruct the jury that it could not convict him of Counts 3 and 4 if it found that the two crimes were committed during the same time period.  (Petition, Attachment 4 at 7.)  Petitioner also alleges that the trial court failed to instruct the jury that in order to convict him of Count 4, the jury had to find that the continuous acts alleged occurred between August 1, 2002 and March 31, 2003, as charged in the information.  (Id.)  Petitioner further alleges that the jury did not specifically find that Count 3 was not committed during the period alleged in Count 4, and that omission violated petitioner's right to a jury trial and due process.  (Id.)  According to petitioner, the failure to instruct on these matters omitted necessary elements of the crime.

---

[4]  Petitioner argues that Jones is distinguishable from his case and that generic testimony should not be able to support his sexual assault convictions.  (Petition, Attachment 4 at 5 n.1.) However, this court is bound by the state court's determination of state law.  See Jackson, 443 U.S. at 324 n.16; Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes").

1    To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

2    the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

3    process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). The instruction may not be judged in

4    artificial isolation, but must be considered in the context of the instructions as a whole and the

5    trial record. See id. In other words, the court must evaluate jury instructions in the context of

6    the overall charge to the jury as a component of the entire trial process. United States v. Frady,

7    456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

8    A state trial court's refusal to give an instruction does not alone raise a ground cognizable

9    in a federal habeas corpus proceedings. See Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir.

10   1988). The error must so infect the trial that the defendant was deprived of the fair trial

11   guaranteed by the Fourteenth Amendment. See id. Additionally, a jury instruction that omits an

12   element of an offense is constitutional error subject to "harmless error" analysis. See Evanchyk

13   v. Stewart, 340 F.3d 933, 940 (9th Cir. 2003). The omission will be found harmless unless it

14   "'had substantial and injurious effect or influence in determining the jury's verdict.'" California

15   v. Roy, 519 U.S. 2, 4 (1996). Where the trial court simply fails to alert the jurors that they must

16   consider an element of the crime, the omission is harmless if review of the facts found by the

17   jury establishes beyond a reasonable doubt that the jury necessarily found the omitted element.

18   United States v. Lin, 139 F.3d 1303, 1309 (9th Cir. 1998) (error harmless if no rational jury

19   would have made the findings without also finding missing element of the crime). But if the

20   reviewing federal habeas court is in grave doubt as to whether the error had substantial and

21   injurious effect or influence in determining the jury's verdict, the petitioner is entitled to the writ.

22   See Evanchyk, 340 F.3d at 940-42.

23   As stated above, Count 3 charged petitioner with committing lewd acts on Michelle

24   between July 1 and July 31, 2002. See Cal Penal Code § 288(a). Count 4 charged petitioner

25   with continuously sexually abusing Michelle between August 1, 2002 and March 31, 2003. See

26   Cal. Penal Code § 288.5. As to Count 3, the parties requested, and the court gave, a modified

27   version of CALJIC No. 10.41, which provided the definition of a lewd act with a child under 14

28

1    years.  Petitioner also requested, and the court gave, a modified version of CALJIC No. 4.71.5,[5]

2    which specified the time period of the act charged in Count 3.

3            As to Count 4, the parties requested, and the court gave, a modified version of CALJIC

4    No. 10.42.6, which provided the definition of continuous sexual abuse of a child.  Neither party

5    requested, and the court did not give, an instruction like CALJIC No. 4.71.5 in connection with

6    Count 4.

7            Petitioner claims that because the jury was not advised that he could not be convicted of

8    Counts 3 and 4 if the jury found the crimes from both counts were committed during the same

9    time period, it was possible that the jury improperly did just that.  (Petition, Attachment 4 at 6-

10   8.)  The California Court of Appeal rejected this claim.  Considering the instructions as a whole

11   as well as the record, the court concludes that the instructional omissions alleged by petitioner

12   did not substantially influence the jury verdict.

13           As the Court of Appeal concluded, Count 3 was not alleged to have occurred during the

14   same time period as Count 4.  Count 3 charged an individual act occurring in July 2002 and

15   Count 4 charged a continuous abuse between August 1, 2002 through March 31, 2003. (CT 391-

16   92.)  Further, although the trial court did not give CALJIC 4.71.5 in connection with Count 4, it

17   did instruct the jury as to CALJIC No. 17.03, which specified the time period alleged for Count

18   4.[6]  (RT 1016; CT 55.)  Finally, as the Court of Appeal pointed out, the jury verdict forms

19   explicitly added the time periods to Counts 3 and 4.  (CT 402, 405.)  The jury signed and dated

20   the verdict form for Count 3, entitled, "Penal Code 288(a), Lewd Acts with Michelle B A Child

21

22           [5]  The instruction read, "Defendant is accused in Count 3 of having committed the crime
23   of lewd acts with a child under 14 years, . . . on or about a period of time between July 1, 2002
     through July 31, 2002.  In order to find the defendant guilty, it is necessary for the prosecution to
24   prove beyond a reasonable doubt the commission an [sic] act or acts constituting that crime
     within the period alleged.  And, in order to find the defendant guilty, you must unanimously
25   agree upon the commission of the same specific act or acts constituting the crime within the
     period alleged . . . ."  (RT 1011.)

26           [6]  The court instructed, "The defendant is accused in Count 2 of having committed the
27   crime of 288(a) lewd act upon Michelle B. on or about January 3, 2002 and in Count 4 of the
     crime of 288.5(a) continuous sexual abuse of Michelle from the period August 1, 2002 through
28   March 31, 2003.  These charges are made in the alternative . . ."  (RT 1016.)

1  Under 14, July 1, 2002 through July 31, 2002." (CT 402.)  The jury also signed and dated the

2  verdict form for Count 4, entitled, "Penal Code 288.5(a), Continuous Sexual Abuse of Michelle

3  B August 1, 2002 through March 31, 2003."  (CT 405.)

4        Accordingly, even assuming that these omissions were erroneous, they were harmless

5  because they had no substantial or injurious effect on the verdicts.  See Roy, 519 U.S. at 4.  The

6  California Court of Appeal's decision was not contrary to or an unreasonable application of

7  clearly established federal law.  28 U.S.C. § 2254(d).

8        3 & 4.  Constitutional challenges to propensity evidence

9        Petitioner claims that Cal. Evid. Code § 1108, which allows the admission of evidence of

10 prior sex acts, and CALJIC 2.50.01 are unconstitutional on its face. (Petition, Attachment 4 at 8-

11 9.)  Petitioner alleges that the evidence and instruction, allowing the jury to infer that petitioner

12 had a predisposition to commit the crimes violated his right to due process.  (Id.)  Petitioner also

13 claims that introduction of other prior crimes violated his due process right because they were

14 more prejudicial than probative under California Evid. Code § 352.  (Id. at 11-13.)

15       At trial, the prosecution introduced evidence of petitioner's prior sexual abuse of two

16 other young girls, aged 3 and 4 at the time of the abuse, under California Evidence Code §

17 1108(a).  It also introduced evidence of petitioner's prior domestic violence against Michelle's

18 mother, in order to demonstrate that Michelle was too scared to immediately report petitioner's

19 abuse of her and thus delayed reporting any of the abuse.

20       The California Court of Appeal rejected petitioner's claim that admission of propensity

21 evidence was unconstitutional on its face by stating that the California Supreme Court has

22 previously "definitively rejected [petitioner's] argument."   Love, No. A108586, 2006 WL

23 3012921, *13.  It also rejected petitioner's claim under Evidence Code § 352 because the

24 evidence was relevant and "[a]ny prejudice from the evidence was not undue, but was merely the

25 type that naturally flows from the nature of [petitioner's] conduct."  Id. at *14.

26       Habeas relief is available only when the state court's adjudication resulted in a decision

27 that was contrary to, or involved an unreasonable application of, clearly established federal law,

28 as determined by the Supreme Court.  See 28 U.S.C. § 2254(d).  As the Ninth Circuit has noted,

1   "the Supreme Court has never expressly held that it violates due process to admit other crimes

2   evidence for the purpose of showing conduct in conformity therewith, or that it violates due

3   process to admit other crimes evidence for other purposes without an instruction limiting the

4   jury's consideration of the evidence to such purposes. Indeed, the Supreme Court has expressly

5   declined to answer these questions." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001)

6   (citing Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("express[ing] no opinion on whether a

7   state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence

8   to show propensity to commit a charged crime"), overruled on other grounds by 538 U.S. 202

9   (2003).

10        Because the Supreme Court has expressly declined to answer these questions, this court

11   cannot say that, in the instant case, the state appellate court acted in an objectively unreasonable

12   manner.  See Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (stating that, "[b]ecause

13   the [Supreme] Court has expressly left this issue an open question, the state court did not

14   unreasonably apply clearly established federal law in determining that the admission of evidence

15   of Larson's criminal history did not violate due process"); see also Sullivan v. Campbell, No. C

16   06-2725 MHP (PR), 2008 WL 4287822, at *10 (N.D. Cal. Sept. 17. 2008) Cata v. Garcia, No. C

17   03-3096 PJH (PR), 2007 WL 2255224, at *13 (N.D. Cal. Aug.3, 2007); Darn v. Knowles, No. C

18   02-2892 SI (PR), 2003 WL 21148412, at *10 (N.D. Cal. May 14, 2003); cf. Holley v.

19   Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (recognizing that because the Supreme Court

20   "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence

21   constitutes a due process violation sufficient to warrant issuance of the writ," federal courts

22   cannot conclude a state court's admission of "even clearly erroneous admissions of evidence that

23   render a trial fundamentally unfair" is an unreasonable application of clearly established federal

24   law).

25        Thus, petitioner's claims are denied.

26        5.        Exclusion of evidence of Michelle's prior false sexual accusations

27        Petitioner claims that the trial court erred in preventing him from calling to the stand two

28   young boys who were willing to testify that Michelle had previously falsely accused them of

1   sexual abuse.  Petitioner further asserts that the trial court's denial of this request was partially

2   based on trial counsel's failure to obtain the boys' declaration that he advised them of their Fifth

3   Amendment rights and secured their waivers.  Petitioner argues that such a requirement violated

4   his Sixth Amendment right to conflict-free representation.

5       At trial, petitioner attempted to introduce evidence that Michelle had previously falsely

6   accused three young boys two years prior of rape.  Petitioner proffered that Amati Adkins and

7   Lorenzo Gaines would testify that Michelle claimed she was raped by them and another boy in

8   2001.  Medical records from 2001 reported her hymen was still intact and the boys were

9   prosecuted for lesser dispositions.  Petitioner wished to present this evidence to corroborate his

10  defense that Michelle was falsely accusing him of the underlying crimes and she had done so

11  previously with these young boys as well.

12      The trial court understood the intent of petitioner's proffer as relevant to his theory of

13  defense.  In the trial court's ruling, it narrowed the question to a determination of whether

14  Michelle made a false accusation of sexual intercourse against at least one of the three boys in

15  2001.  (RT at 668.)  The trial court noted that there was no transcript of any testimony by

16  Michelle from the 2001 incident and that while she presumably made statements to a police

17  officer, no police report had been provided to the court to determine exactly what statements

18  Michelle made.  (Id.)  In denying the petitioner's request to question Michelle about the 2001

19  incidents, the court stated:

20          So, the difficulty I have with all of this is we are going to end up with a mini-
            trial on whether in 2001 Michelle made an allegation that the boys had sexual
21          intercourse with her, what she meant by that, what she told the police officer,
            whether it was what police officer put in his or her report or his or her
22          interpretation of what Michelle said, or the exact words of what she said,
            followed by a mini-trial about whether what the boys actually did was put
23          their penis in Michelle [sic] vagina, including medical testimony.

24          And beyond that, the [People] would try to impeach with a variety of acts by
            Mr. Gaines -- I believe I have this correct -- twice he was booked for robbery
25          or possibly three times, as recent as June 2003.  So, the People have indicated
            they would bring in witnesses so we would further extend the inquiry with
26          witnesses about conduct.  And Mr. Adkins is subject to impeachment for
            robbery and been detained for attempted robbery.  And my concern is that
27          they would come into court and then they would take the Fifth with regard to
            the impeachment evidence.

28

1   (RT at 669-671.)

2        The California Court of Appeal affirmed the trial court's decision under Evidence Code

3   § 352. Love, No. A108586, 2006 WL 3012921, *18.  The Court of Appeal agreed with the trial

4   court's determination that the evidence would have been "marginally probative" but ultimately

5   would be "unduly time consuming and would create a substantial risk of misleading or

6   confusing the jury," requiring, "mini-trials, including presentation of medical testimony, to

7   prove the circumstances surrounding the prior allegations and the credibility of both Michelle

8   and the juveniles."  (Id.)

9        It is well-settled that "the Constitution guarantees criminal defendants 'a meaningful

10  opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S. 319, 324

11  (2006) (quoting Crane v. Kentucky, 476 U.S. 683 690 (1986)).  Thus, the erroneous exclusion

12  of critical, corroborative defense evidence violates the right to present a defense. DePetris v.

13  Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001).  However, the accused does not have an

14  unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

15  under standard rules of evidence.  Taylor v. Illinois, 484 U.S. 400, 409-410 (1988).  States are

16  given considerable latitude under the Constitution to establish rules excluding evidence from

17  criminal trials.  Holmes, 547 U.S. at 324.  This right is abridged, however, by rules of evidence

18  that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the

19  purposes the rules are designed to serve.  Id.  "Thus, a trial judge may exclude or limit evidence

20  to prevent excessive consumption of time, undue prejudice, confusion of the issues, or

21  misleading the jury.  The trial judge enjoys broad latitude in this regard, so long as the rulings

22  are not arbitrary or disproportionate." Menendez v. Terhune, 422 F.3d 1012, 1033 (9th Cir.

23  2005) (citations omitted); see Montana v. Egelhoff, 518 U.S. 37, 42-43 (1996) (holding due

24  process rights are not violated by exclusion of relevant evidence where probative value is

25  outweighed by danger of prejudice or confusion).

26        Although the state court did not analyze the issue under Chambers v. Mississippi, 410

27  U.S. 284 (1973), or determine whether the exclusion of evidence violated petitioner's right to

28  present a defense, this court concludes that the state court's decision was not contrary to or an

1    unreasonable application of clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8

2    (2002) (noting that a state-court decision is not contrary to Supreme Court precedent for failure

3    to cite such decisions, "so long as neither the reasoning nor the result of the state-court decision

4    contradicts [it]"); Williams v. Warden, 422 F.3d 1006, 1010 (9th Cir. 2005).

5         Applying Chambers to the facts of this case demonstrates that the facts are materially

6    distinguishable from each other.  The Supreme Court in Chambers heavily stressed the

7    trustworthiness and reliability of excluded evidence as compelling its admissibility.  Chambers,

8    410 U.S. at 302.  On the other hand, here, the record demonstrates no similar indicia of

9    reliability or trustworthiness in the evidence petitioner was prevented from introducing.

10   Traditionally in habeas proceedings, federal courts invoke a five-part balancing test

11   promulgated in Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985), to determine whether

12   exclusion of the evidence was reasonable in light of the competing interests involved.  These

13   factors are: (1) "the probative value of the evidence on the central issue;" (2) "its reliability;"

14   (3) "whether it is capable of evaluation by the trier of fact;" (4) "whether it is the sole evidence

15   on the issue or merely cumulative;" and (5) "whether it constitutes a major part of the attempted

16   defense."  Id. at 994.

17        First, the probative value on Michelle's credibility of whether she falsely accused the

18   boys of rape is unclear.  The jury would have had to determine what exactly Michelle accused

19   the boys of, the circumstances surrounding the accusation, and then determine whether those

20   accusations were in fact false.  (RT 669-671.)   Only if the jury believed petitioner's version of

21   events and ultimately concluded that Michelle's accusations were false would the evidence have

22   any probative value at all.  Second, the reliability of both the boys' proposed testimony that they

23   did not have sexual intercourse with Michelle is not strong, considering that they ultimately

24   admitted to a lesser offense and the prosecutor had significant impeachment evidence against

25   the boys in the form of criminal history.  (RT 578-79.)  Third, the evidence would be capable of

26   evaluation by the trier of fact, as credibility determinations are a usual function for the jury to

27   make.  See Chia v. Cambra, 360 F.3d 997, 1005 (9th Cir. 2004).  Fourth, although specific

28   evidence of an allegedly prior false accusation was not presented at trial, it was not the sole

evidence on the issue of Michelle's credibility.  In fact, Michelle's version of events regarding petitioner was heavily impeached throughout trial with her inconsistent statements.  Finally, the excluded evidence was a major part of the defense theory, which focused solely on Michelle's credibility.  Comparing <u>Chambers</u> to the instant case demonstrates that the same persuasive considerations of reliability and trustworthiness of the evidence were not present in the evidence petitioner wished to admit.

Thus, after reviewing the record, weighing the <u>Miller</u> factors, and keeping in mind the highly deferential AEDPA standard, <u>see</u> <u>Christian v. Frank</u>, 595 F.3d 1076, 1081 (9th Cir. 2010), the court concludes the state court's decision excluding the evidence was not unreasonable.

Regarding petitioner's assertion that the trial court required trial counsel to personally advise the boys of their Fifth Amendment rights and secure their waiver, the court is unpersuaded.  When the trial court issued its ruling, it stated:

> So, my concern is that we would be engaged in a mini-trial on all these issues about whether -- about what [Michelle] said, what the exact accusations were in 2001, and then be confronted with having Mr. Adkins and Mr. Gaines come in, but that each of them be subject to cross-examination and impeachment and potentially claiming the Fifth.

> So, that's why I indicated that if the Court were to entertain this cross-examination of Michelle, that I would need some reassurance that Adkins and Gaines had been advised by counsel of their rights in this regard and of the problems with being cross-examined on this; and that they still, in light of all of that, would be willing to come in and continue with that.  But they would need appointment of counsel for that to be done.

> So, without that reassurance, I am still back to the original state that we are going to have a mini-trial on this 2001 incident with many witnesses being called, not only to impeach Michelle but then to impeach the two witnesses as well.

(RT 670-71.)

On direct review, the California Court of Appeal stated that the trial court initially told the parties that it would consider admitting the evidence "if the defense offered a declaration under penalty of perjury that attorneys representing the juveniles had advised them of their privilege. . ." <u>Love</u>, No. A108586, 2006 WL 3012921, *18, and the petitioner ultimately failed to provide such declarations.  The Court of Appeal concluded that the trial court's ruling was

1    correct and only excluded the evidence after petitioner's counsel failed to provide any

2    assurances that the juveniles had been advised of their rights by an attorney.  Id.

3         Although petitioner asserts that trial counsel was under the impression that the trial court

4    was requesting he himself issue the Fifth Amendment advisements and secure the waivers, the

5    state court did not agree with that interpretation of the facts.  A federal habeas court may grant

6    the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that

7    was based on an unreasonable determination of the facts in light of the evidence presented in

8    the State court proceeding."  28 U.S.C. § 2254(d)(2).  Here, petitioner fails to demonstrate that

9    the Court of Appeal's determination of facts that the trial court did not "put the responsibility"

10   on defense counsel to advise the juveniles of their rights was unreasonable.  Cf. DeWeaver v.

11   Runnels, 556 F.3d 995, 1006-07 (9th Cir. 2009) (petitioner did not show unreasonable

12   determination of facts by merely disagreeing with the state court's interpretation of the record

13   but not pointing to any material fact that the court failed to consider in reaching its

14   determination that the trial judge had not coerced the jury to reach a verdict).  Thus, petitioner is

15   not entitled to relief on this claim.

16        6.    Cumulative error

17        Petitioner claims that as a result of all his allegations, the cumulative effect of the

18   alleged errors rises to the level of prejudicial error.  In some cases, although no single trial error

19   is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still

20   prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford,

21   334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors

22   hindered defendant's efforts to challenge every important element of proof offered by

23   prosecution).  However, where as here, there is no single constitutional error existing, nothing

24   can accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d

25   939, 957 (9th Cir. 2002).

26                                    **CONCLUSION**

27        For the reasons set forth above, the court concludes that petitioner has failed to show a

28   violation of his federal constitutional rights in the underlying state criminal proceedings.

1    Accordingly, the petition for writ of habeas corpus is DENIED.  The clerk shall close the file.

2                                    **CERTIFICATE OF APPEALABILITY**

3            The federal rules governing habeas cases brought by state prisoners have recently been

4    amended to require a district court that denies a habeas petition to grant or deny a certificate of

5    appealability ("COA") in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

6    foll. § 2254 (effective December 1, 2009).  For the reasons set out in the discussion above,

7    petitioner has not shown "that jurists of reason would find it debatable whether the petition

8    states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it

9    debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel,

10   529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

11           IT IS SO ORDERED.

12
     DATED: ___7/30/10_____                    _Ronald M. Whyte_____
13                                                  RONALD M. WHYTE
14                                                  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28